THOMAS T. LONARDO, P.C. *v.* ALBERTO DICHELLO
(AC 30656)

Flynn, C. J., and Robinson and Sullivan, Js.*

---

[7] We note that the defendant did not retreat or leave the church when he noticed that the victim was also there.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 26, 2009—officially released June 8, 2010

*Peter E. Ricciardi,* with whom was *Albert J. Oneto IV,* for the appellant (defendant).

*Thomas T. Lonardo,* for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, Alberto Dichello, appeals from the judgment of the trial court, rendered after a trial to the court, awarding the plaintiff, Thomas T. Lonardo, P.C., $7472.50 in damages for legal services provided by the plaintiff that were not remunerated by the defendant. On appeal, the defendant claims that the court improperly: (1) awarded damages after finding that no fee agreement existed between the parties; (2) awarded damages on the basis of its determination that the plaintiff had complied with rule 1.5 of the Rules of Professional Conduct; (3) awarded damages after finding that the plaintiff failed to notify the defendant of its intended billing rates; (4) awarded damages after finding that the plaintiff had continued to provide legal services after it had been discharged as counsel by the defendant; (5) awarded damages on the basis of quantum meruit even though the plaintiff's complaint alleged only breach of contract; and (6) impugned the defendant's right to due process, as enshrined in the fourteenth amendment to the United States constitution and in article first, § 10, of the constitution of Connecticut, by awarding damages on the basis of a claim that

was not alleged in the plaintiff's complaint and was not argued to the court. Although the plaintiff did not file a cross appeal,[1] it argues in its appellate brief that the judgment should be reversed because the court improperly found that (1) the parties had not entered into an oral agreement for legal services and (2) it was only entitled to $7472.50 in damages. Because we conclude that the record is inadequate for our review, we affirm the judgment of the trial court.

The record discloses the following procedural history and findings of fact. Between 1995 and 2003, the plaintiff represented the defendant in several commercial real estate transactions. Although there had never been a written fee agreement, the plaintiff normally charged the defendant either a flat fee or billed him at an hourly rate of $200 per hour. In December, 2000, the plaintiff billed the defendant a flat fee of $1500 for representing him in a real estate transaction, while in November, 2002, the plaintiff billed the defendant a flat fee of $1150

---

[1] Because the plaintiff argues in its appellate brief that the court's judgment should be reversed, it should have filed a cross appeal. See *Mitchell* v. *Silverstein*, 67 Conn. App. 58, 60 n.5, 787 A.2d 20 (2001) ("[i]f an appellee wishes to change the judgment in any way, the party must file a cross appeal" [internal quotation marks omitted]), cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002). Moreover, although this court has discretion to address a claim that should have been raised by a cross appeal; see *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 198 n.7, 635 A.2d 1220 (1994) (addressing issue that should have been raised by cross appeal because issue had been fully briefed and it appeared parties would not be prejudiced); we decline to do so because the record is inadequate for our review, and the plaintiff, as a cross appellant, failed to file a motion for articulation. See *Knapp* v. *Knapp*, 270 Conn. 815, 825, 856 A.2d 358 (2004) (cross appellant's failure to seek articulation of judgment left reviewing court without ability to engage in meaningful review). Thus, just as we are unable to review the defendant's claims due to an inadequate record, we also are unable to review the plaintiff's claims for the same reason. As we will more fully explain, both an appellant and a cross appellant have the burden of producing an adequate record for us to review their respective claims, and neither party has met that burden in this case.

for representing him in a real estate transaction of similar complexity. Contemporaneously with these transactions, the plaintiff also represented the defendant in a third transaction from February, 2000, through June, 2002. This third transaction was more complex, and the plaintiff billed the defendant at a rate of $200 per hour, which culminated in a final bill totaling $4930.

The plaintiff's representation of the defendant in the transaction at issue began on June 22, 2003, and lasted until June 24, 2004, during which the plaintiff billed the defendant $16,822.50. This transaction was more complicated than those in the past, requiring the plaintiff to assist the defendant with the formation of multiple, limited liability companies and to represent the defendant in connection with his securing a commercial loan to build a structure that was to house these new businesses. The transaction proceeded slowly, and the defendant retained new counsel, Peter E. Ricciardi, on or before April 1, 2004. At that time, the plaintiff submitted to Ricciardi a bill for services rendered, and Ricciardi indicated in a letter dated April 1, 2004, that the defendant agreed to pay the bill at the time of the closing. Moreover, the plaintiff continued to provide legal services to the defendant in connection with this transaction subsequent to April 1, 2004, billing the defendant an additional $7000 in legal fees between April 21, 2004, and June 10, 2004.[2]

The plaintiff filed this action on July 14, 2006, and trial was held on September 24, 2008. In its one count complaint, the plaintiff alleged that it had provided legal services to the defendant "under an agreement between

---

[2] It is unclear from the record whether the defendant requested this additional work. During oral argument to this court, however, the defendant conceded both that the plaintiff continued to work on the file after April 1, 2004, because he had greater familiarity with the transaction and that the defendant did not object to the plaintiff's continuing work, even after receiving this invoice.

the parties" and that the defendant had not paid the amount due under that agreement, and, as a result, the plaintiff claimed damages. In its memorandum of decision, the court found that there was neither a written nor an oral fee agreement between the parties that governed the transaction, although the court also found that the plaintiff had complied with rule 1.5 (b) of the Rules of Professional Conduct, which waives the need for a written fee agreement "when the lawyer will charge a regularly represented client on the same basis or rate. . . ." Rules of Professional Conduct 1.5 (b). The court then cited *Cole* v. *Myers*, 128 Conn. 223, 230, 21 A.2d 396 (1941), which considered the remuneration of attorney's fees for claims alleging breach of contract and quantum meruit,[3] and awarded the plaintiff $7472.50 in damages. This appeal followed.

We begin by noting that it is unclear from the court's memorandum of decision which legal theory it relied on to award damages. By way of example, although the court found that there was not a fee agreement governing the transaction at issue, it also found that "[t]he plaintiff's claim for [its] fee does fall under the exception of rule 1.5 (b), as the defendant was a regularly represented client." Thus, it is unclear whether the court predicated its award of damages on a breach of contract or on compliance with rule 1.5 (b) of the Rules of Professional Conduct.[4] Moreover, the court's

[3] It bears emphasis, however, that the portion of *Cole* cited by the court related to the justification for remunerating attorney's fees under a claim of quantum meruit; the cited passage did not involve a breach of contract claim.

[4] Although rule 1.5 (b) does not provide an independent cause of action; see *Gagne* v. *Vaccaro*, 255 Conn. 390, 403, 766 A.2d 416 (2001) (Rules of Professional Conduct "are not designed to be a basis for civil liability" [internal quotation marks omitted]), on appeal after remand, 80 Conn. App. 436, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004); ambiguity nevertheless is created because the court's decision fairly could be read to base the award of damages on compliance with this rule.

citation of quantum meruit[5] precedent in a case alleging only a breach of contract claim further obscures the legal basis it relied on to award damages. Finally, there is nothing in the record to indicate how the court arrived at the amount of damages that it awarded. Accordingly, the record does not reveal the basis for the court's judgment.[6]

As we often have observed: "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claim] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). Furthermore, it is axiomatic that the appellant must provide this court with an adequate record for review. See Practice Book § 61-10. Indeed, "[u]nder these circumstances, the [appellant] should have filed a motion for articulation to preserve an adequate record for review. See Practice Book §§ 61-10 and 66-5. It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 685–86, 911 A.2d 300 (2006). "[W]e will, in the absence of a motion for articulation, assume

---

[5] Although the court never used the term "quantum meruit" explicitly in its decision, its apparent reliance on quantum meruit precedent further obfuscates the legal analysis that it relied on to support its judgment.

[6] We note that the defendant agrees with our assessment in this regard. During oral argument to this court, the defendant stated that he was "struggling to try to find out what the basis was for awarding any damages."

that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Accordingly, because the record does not reveal the basis for the court's judgment and the defendant failed to file a motion for articulation, we are unable to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.