JOYCE SZEKERES ET AL. *v.* NANCY T. MILLER ET AL.
(AC 31024)

Harper, Beach and Hennessy, Js.

Argued May 18—officially released September 7, 2010

*Zbigniew S. Rozbicki,* for the appellants (plaintiffs).

*Thomas J. Weihing,* with whom, on the brief, were *Janice L. Rosenfeld* and *Virginia C. Foreman,* for the appellees (defendants).

*Opinion*

PER CURIAM. The plaintiffs, Joyce Szekeres, Stephanie Ann Dridi and Chaker Dridi, appeal from the trial court's denial of their application for a prejudgment remedy. The plaintiffs filed the application in order to secure a judgment against the defendants, Stephen Szekeres Miller, Denise Miller and Nancy T. Miller. On appeal, the plaintiffs claim that if the court had properly defined probable cause, the court would have granted their prejudgment remedy application. Because we conclude that the record is inadequate for our review, we decline to review this claim and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiffs' appeal. On January 15, 2009, the plaintiffs filed a complaint alleging that the defendants

were involved in a fraudulent scheme to avoid the payment of an outstanding $255,000 judgment from prior litigation that Stephen Szekeres Miller and Denise Miller owed to the plaintiffs. Specifically, the plaintiffs alleged that on June 5, 2008, Stephen Szekeres Miller and Denise Miller transferred certain real property to Nancy Miller with the intent of avoiding or hindering the payment of the judgment. Furthermore, they averred that Nancy Miller was a witness in the prior litigation, that she was aware that Stephen Szekeres Miller and Denise Miller were indebted to the plaintiffs, and that she was privy to the jury's verdict on June 5, 2008, against Stephen Szekeres Miller and Denise Miller. The plaintiffs alleged that by accepting the fraudulent conveyance of the property, Nancy Miller aided, abetted and conspired with Stephen Szekeres Miller and Denise Miller. The plaintiffs requested that the court set aside the conveyance and award appropriate damages.

In conjunction with their complaint, the plaintiffs also filed an application for a prejudgment remedy on January 15, 2009. They argued that there was probable cause that a judgment in the amount of the prejudgment remedy sought would be rendered in their favor. Thus, in order to secure the judgment, the plaintiffs requested that the court attach the subject property. A hearing on the application was held on April 28, 2009.

After the parties presented their arguments and the court heard testimony from Nancy Miller, the court denied the plaintiffs' application in an oral ruling. The court determined that the plaintiffs had not met their burden of proof of establishing probable cause that they would prevail on the cause of action alleged. Specifically, the court stated that the "transfer of the property in question was before the verdict was entered. As to whether Nancy Miller could foresee what the verdict was going to be and, therefore, that [future result is what] caused the transfer, that's speculative. The court

can't find inferences to substantiate or to make that kind of an inference. The inference that's asked to be drawn is that [Nancy] Miller testified at the trial [in the earlier litigation] and that she knew what the outcome was going to be, and that the transfer to her was to avoid the payments of the judgment—that's speculative. . . . That's not a basis for a probable cause determination whereby a prejudgment remedy can be granted." This appeal followed.

On appeal, the plaintiffs argue that if the court had applied the correct definition of probable cause, in light of factors that are indicative of fraudulent intent, to the undisputed facts, it is clear that the court would have had a "bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *Crotty* v. *Tuccio Development, Inc.*, 119 Conn. App. 775, 779, 990 A.2d 888 (2010). Thus, if the court had applied the correct standard, the plaintiffs contend, the court would have granted the prejudgment remedy application. As a result, the plaintiffs claim that the denial of the application was not only unreasonable but constituted clear error. See id. (review of trial court's denial of prejudgment remedy application for clear error).

The record reveals that the plaintiffs not only failed to provide this court with a signed transcript of the court's oral decision but also failed to request an articulation. As the appellants, the plaintiffs bore the burden of providing this court with an adequate record for review of their claim. *Dreambuilders Construction, Inc.* v. *Diamond*, 121 Conn. App. 554, 563, 997 A.2d 553 (2010); see also Practice Book § 61-10. "When the record does not contain either a memorandum of decision or a transcribed copy of an oral decision signed by the trial court stating the reasons for its decision,

this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review. . . . If there is an unsigned transcript on file in connection with an appeal, the claims of error raised by the plaintiff may be reviewed if this court determines that the transcript adequately reveals the basis of the trial court's decision." (Citation omitted; internal quotation marks omitted.) *Solano* v. *Calegari*, 108 Conn. App. 731, 734 n.4, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008).

Furthermore, as we often have observed: "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiffs' claim] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). "It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Thomas T. Lonardo, P.C.* v. *Dichello*, 121 Conn. App. 528, 533, 996 A.2d 758 (2010). Finally, "we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002).

We conclude that the plaintiffs' failure to seek a signed transcript or subsequently to request an articulation pursuant to Practice Book § 66-5 bars our review

of their claim. The court's oral ruling at no time fleshed out the probable cause standard it applied in denying the application, and, consequently, our review of the unsigned transcript can provide no further elucidation. Thus, given this ambiguity, we simply cannot determine whether the court in fact applied an improper standard in denying the application. Moreover, we also note that because the plaintiffs have failed to file a motion for articulation, we assume that the court acted properly. See id.